IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEPHEN W. ROBINSON**, | CIVIL ACTION NO.   06-1504 |
| Plaintiff, | |
| v. | JUDGE JOY FLOWERS CONTI |
| **MATTHEWS INTERNATIONAL CORPORATION**, | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

CONTI, District Judge

In this memorandum opinion, the court considers the motion for summary judgement (Doc. No.  27) filed by defendant Matthews International Corporation ("Matthews" or "defendant") against all claims asserted by plaintiff Stephen W. Robinson ("Robinson" or "plaintiff") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§621 et seq. ("ADEA").  The claims include allegations of discrimination based upon sex and age, constructive discharge and a Pennsylvania common law claim of wrongful discharge.  After reviewing the record and the submissions of the parties, viewing all disputed facts in plaintiff's favor and drawing all reasonable inferences in plaintiff's favor, the court concludes that because there are no genuine issues of material fact in dispute, defendant's motion will be granted.

## Factual Background

The factual background is derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to the nonmoving party.[1]  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

### Plaintiff's Employment With Defendant

On January 3, 2000, plaintiff began his employment with the York Group, Inc. ("York Group") as the bronze segment controller in its Kingwood, West Virginia plant.  (Joint Statement of Material Facts ("JS") ¶ 1.)  Plaintiff remained as the bronze segment controller when defendant acquired the York Group on June 24, 2001 and continued in that position until September 1, 2002, when he was promoted to a position in Pittsburgh, Pennsylvania.  (JS ¶ 2.)  In June 2002, plaintiff was approached by defendant's chief financial officer at the time, Edward Boyle, who asked plaintiff if he would be interested in the position of operations controller for the casket division, located in defendant's North Shore office in Pittsburgh, Pennsylvania.  (JS ¶¶ 3, 5.)  In August 2002, plaintiff was offered the promotion and began working as the

---

[1]Plaintiff failed to set forth his additional facts as separately numbered paragraphs. Plaintiff, instead, included additional statements and facts within his responses to defendant's proposed facts.  Defendant argues that plaintiff's additional statements in the responses after admitting defendant's factual statement, should be stricken pursuant to Local Rule 56.1(E). While the court agrees with defendant that plaintiff's procedure was not the appropriate manner to include new factual allegations, the court will consider plaintiff's additional statements in his responses (to the extent they are supported by the record) as his statement of additional facts for purposes of this motion.  Counsel are advised that strict compliance with Local Rule 56.1(E) will be required in the future.

operations controller on September 1, 2002 . (JS ¶¶ 3, 4.)

While acting as operations controller, plaintiff had accounting responsibility for a variety of plants in the casket division, including the Marshfield, Missouri metal assembly plaint; the Lynn Metal Assembly plant in Indiana; the Richmond stamping plant in Richmond, Indiana; York Technologies in Indiana; Elder Davis ( a cremation plaint in Indiana); Anniston Stamping in Alabama; additional plants in Columbus, Mississippi and the York Wood Plant in York, Pennsylvania. (JS ¶ 6.)

In early summer 2004, defendant decided to consolidate the responsibilities of the financial controller, Jenna Silkwood ("Silkwood"); the operations controller, Robinson; and the manager of financial analysis, Larrry Elewski ("Elewski") into one division controller position. (JS ¶ 7; Bartolacci Dep. 7:21 (Dec. 4, 2007).)

On November 5, 2004, Joseph Bartolacci ("Bartolacci") met with plaintiff and advised him that his position and the position of finance controller were being eliminated effective at the end of the year. (JS ¶ 8.) At the meeting, Bartolacci offered plaintiff the wood plant controller position in York, Pennsylvania. (Id.) Bartolacci told plaintiff at this meeting, that his performance was unacceptable and that plaintiff lacked credibility with his peers. (Id.) Plaintiff alleges that this was the first time any supervisor expressed dissatisfaction with his job performance. (Id.) The wood plant controller position offered to plaintiff was a demotion with reduced responsibilities, a $30,000 wage cut and involved a 225 mile commute one way. (JS ¶ 9.) The wood plant controller position was only responsible for the plant in York, Pennsylvania. (JS ¶ 9.)

Defendant told plaintiff that it would be his decision whether to relocate to York. (JS ¶ 10.) Defendant claimed that the plant controller position could be successfully performed from Pittsburgh, Pennsylvania, and that plaintiff was aware that he could perform the work from Pittsburgh. (Id.) Defendant alleged that Ed Hunt, another plant controller who reported to plaintiff, and fulfilled his plant controller duties for the plant near Richmond, Indiana while residing in the Pittsburgh area. (Id.) Plaintiff claimed that he would need to travel extensively to support the York wood plant while residing in Pittsburgh. (Id.) Plaintiff claimed the job could not properly be done without relocating. (Id.)

After considering whether he would accept the wood plant controller position for a couple weeks, plaintiff communicated to Bartolacci that he would not accept the position. (JS ¶ 11.) Plaintiff's doctor had specifically restricted his sitting or traveling time to thirty to forty-five minutes. (Id.) Plaintiff believed he could not support his family on the salary reduction and relocation would end his wife's full-time employment. (Id.)

Plaintiff continued to work for defendant into early January 2005, which allowed for 500 shares of defendant's stock to vest in plaintiff and for plaintiff to train his replacement, Jim Kenna ("Kenna"). (JS ¶ 13.) On January 31, 2005, plaintiff was terminated. (JS. ¶ 15.) Plaintiff was fifty-one years old at that time. (JS ¶ 16.) Plaintiff received the severance pay he was entitled to pursuant to the employee handbook. (JS ¶ 14.) Defendant provided plaintiff with a career counselor and plaintiff was able to find other employment in five and one-half months. (JS ¶ 12.)

**Facts Surrounding the Division Controller Position**

      a.      Defendant's Reason for Filling the Division Controller Position

In 2004, every division of defendant had one person designated as the financial leader of the entire division. The only exception was the casket division of the company, which had four financial leaders - a division controller, an operations controller, a financial controller, and a manager, financial analysis. (JS ¶ 56.) For other divisions of defendant in 2004, the following individuals performed similar functions to that of the division controller of the casket division: bronze division, William Bonomo; cloverleaf division, Stephen Turchick; cremation division, Andrew Kalinyak ("Kalinyak"); graphics division, Keith Williams; and marking products division, Lou Seventi. (JS ¶ 57.) While plaintiff was serving as the operations controller in 2003, David Beck ("Beck") moved to the position of corporate controller, leaving the position of division controller for the casket division vacant. (JS ¶ 58.)

In order to lower the cost associated with having three employees performing a job that could be performed by one individual, defendant, in 2004, decided: 1) to eliminate the positions of financial controller, operations controller, and manager, financial analysis; and 2) to hire a division controller to perform all three tasks. (JS ¶ 58.) At that time, plaintiff was operations controller, Silkwood was financial controller, and Elewski was the manager, financial analysis. (Id.)

      b.      Candidates for the division controller position

Defendant had a policy of attempting to fill positions from within the company when appropriate. (Nicola Dep. 20:12-16 (Dec. 4, 2007).) In late summer or early fall of 2004, a

decision was made by defendant not to consider Robinson for the position of division controller. (Bartolacci Dep. 7:21 (Dec. 4, 2007.) Stephen Nicola ("Nicola"), the person responsible for filling the division controller position, considered Robinson and Silkwood candidates for the division controller position, but decided not to hire either one. Nicola did not think either was the appropriate candidate to fill the position. (Nicola Dep. 24:14-21 (Dec. 4, 2007.).) Nicola believed that Robinson was not an appropriate candidate, because Robinson did not possess sufficient leadership, initiative or analysis skills for the position of division controller. (Nicola Dep. 29.) Nicola considered Mark Benvenuto ("Benvenuto") an appropriate candidate for the position. (Nicola Dep. 25.) Kalinyak was also considered an appropriate candidate at that time. (Id. 40.)

Defendant first offered the division controller position to Kalinyak, who did not accept. (JS ¶¶ 60, 63.) Kalinyak, forty-seven years old at the time, was employed as defendant's division controller of its cremation division and had never received a score below the above-standard "commendable" rating on any performance appraisal from 2003 through 2004. (JS ¶¶ 61, 62.) Kalinyak did not participate in a formal application process for the position, but was offered the position by defendant. (Kalinyak Dep. 23 (Nov. 28, 2007).)

Defendant offered the position to Benvenuto who also declined the position. (JS ¶ 67.) Benvenuto, thirty-six years old at the time, held the position of manager of external reporting and financial accounting. (JS ¶¶ 64, 65.) Benvenuto never received a score below the above-standard "commendable" on a performance appraisal in 2003 or 2004. (JS ¶ 66.) Benvenuto did not participate in a formal application process for the position, but was offered the position by defendant. (Benvenuto Dep. 23-24 (Nov. 28, 2007).)

Next, defendant offered the division controller position to Kenna who accepted. (JS ¶¶ 68, 69.) Kenna, thirty-six years old at the time, did not possess a post-graduate degree. Kenna had a bachelor's degree in accounting, and experience in general accounting and operations while employed with All-Clad Metalcrafters, LLC and Bake Line/Atlantic Baking Co. (JS ¶¶ 70,71.) Kenna had audit experience while employed at E.G. Conley. (Id. ¶ 71.) Kenna applied for the job through a headhunter. (Kenna Dep. 4:3-5 (Nov. 29, 2007).)

Robinson, fifty-one years old at the time, was considered a candidate for the job, but was rejected early in the process. (Nicola Dep. 24.) Robinson earned a Masters of Business Administration ("MBA") degree with double specializations in finance and management from Marshall University in May 1994, and had a bachelor's degree in management and marketing. Plaintiff's experience included working: 1) four years in the payroll department at Union Carbide Metal Division; 2) one year as the second highest ranking person in the accounting department of American Electric Power; 3) nearly fourteen years as the top person in the accounting department with a staff of eleven direct reports at American Electric Power; 4) less than one year as controller of Anderson Mavor USA; 5) four years as controller for Swanson Industries in charge of the accounting department who reported directly to the president and Chief Executive Officer of the company; and 6) several years as the bronze segment controller and casket division operations controller for defendant. (Id. ¶ 71.)

   c.  The monster.com ad

   Plaintiff was registered with monster.com to receive email notification for controller-type jobs. (JS ¶ 72.) On August 13, 2004, plaintiff learned through a monster.com email notification about the availability of a division controller position that did not specify the employer. (JS ¶

73.)  Plaintiff did not apply for the position at the time because he was comfortable with the position he held with defendant and was not aware that his current position was being eliminated. (JS ¶ 74.)

**Allegations of previous age discrimination by defendant**

Plaintiff testified that he was aware of employees of defendant who were over fifty and despite good performance were being replaced by younger workers.  (JS ¶¶ 77, 78.)  Plaintiff identified Peter Nazare as one individual who suffered discrimination on the basis of age as he was terminated with no notice and replaced with Mark Proudfoot, an individual under the age of forty, who had no experience at the time he replaced Peter Nazare.  (JS ¶ 78.)

Plaintiff also identified Joseph Givens and Fred Turnley as other workers who suffered discrimination.  (JS ¶ 78.)  Besides plaintiff's observations, plaintiff adduced no evidence in support of these allegations.  (Id.)

**Plaintiff's Sex Discrimination Claim**

a.    Qualifications:  Sarbanes-Oxley compliance coordinator

Silkwood's position of financial controller was eliminated at or around the same time that plaintiff's position of operations controller was eliminated.  (JS ¶ 80.)  Silkwood had been employed by defendant since defendant acquired the York Group in 2001.  (JS ¶ 81.)  Silkwood was fifty-seven years old at the time that her position was eliminated.  (JS ¶ 82.) Defendant offered Silkwood the position of Sarbanes-Oxley compliance coordinator ("S-O coordinator"). (JS ¶ 83.)

The S-O coordinator position was responsible for the effective coordination of all phases

of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (codified as amended in scattered sections of 15 U.S.C.) ("Sarbanes-Oxley"), including compliance testing and essential duties involving the review of the accounting process documentation and the coordination of external audit compliance. (JS ¶ 84.) It required five to ten years of external audit and business experience, and listed a certified public accountant ("CPA") credential as preferred. (Id.) The position required knowledge of Sarbanes-Oxley requirements and familiarity with § 404 of Sarbanes-Oxley. (Id.) The job also required a reasonable knowledge of generally accepted accounting principles ("GAAP") as well as internal and external contact with many persons to coordinate Sarbanes-Oxley work and perform audits. (Id.)

Defendant alleges that as a CPA, Silkwood was particularly qualified for the position due to her past auditing experience in performing auditing functions from 1981-1991 for the CPA firm Cummings & Company, including the design and performance of audit testing procedures. (JS ¶ 85.) She performed audits from 1991-1998, after starting her own CPA firm and worked for AuditForce, Inc. as a professional consultant. (Id.) Silkwood had knowledge and was trained about Sarbanes-Oxley and its requirements. (Id.)

Plaintiff is not a CPA and did not perform any audit functions while working for defendant. He, however, testified that he had handled "anything involved" with accounting functions when he worked for American Electric Power. (JS ¶ 86.) Plaintiff testified that although he was not more qualified than Silkwood, he could perform the job she was awarded as well as she could. (JS ¶ 88.) Plaintiff had no training or special knowledge about Sarbanes-Oxley and its requirements. (Robinson Dep. 73 (May 18, 2007).)

       b.    Education and Training of Silkwood and Plaintiff

While working for defendant, Silkwood took continuing professional education ("CPE") courses to maintain her CPA certification, including training on the new Sarbanes-Oxley reporting rules, although she was not requested to do so by defendant. (JS ¶¶ 89, 90, 91.) Plaintiff admitted that he did not know whether Silkwood requested training or if she was directed to attend training by defendant so that she could maintain her CPA certification. (JS ¶ 92.) Plaintiff was aware of defendant's tuition reimbursement plan, but never used it even though he was eligible, as he had already earned an MBA degree with double specializations in finance and management. (JS ¶ 93.)

Silkwood's overall performance reviews in 2003 and 2004 were above standard, "commendable". (JS ¶ 94.) In 2003, she received a well above standard, "distinquished" award in the categories of "leadership" and "taking initiative." (Id.) Silkwood was not qualified for the division controller position because she lacked the operational background for the position. (JS ¶ 95.)

**Plaintiff's Performance With Defendant**

In September 2002, plaintiff began his duties as operations controller in defendant's North Shore (Pittsburgh, Pennsylvania) office and reported to Beck through September 2003. (JS ¶ 20.) Plaintiff reported to John Maurer ("Maurer") until the spring of 2004, and thereafter to Bartolacci until plaintiff left defendant's employ. (Id.)

On November 3, 2003, Beck evaluated plaintiff in a management performance appraisal as competent overall. (JS ¶ 21.) Beck commented that plaintiff brought an understanding of defendant's processes and procedures that was helpful to the other members of the staff, but did not actively take the lead in identifying, analyzing and resolving apparent issues relative to

forecasting the division's future financial performance or its reported actual financial results to senior management. (JS ¶ 22.) Beck's appraisal also noted that much of the difficulties plaintiff faced were not his own doing and were simply a result of the situation in which he was placed. (JS ¶ 22.)

Maurer declared that plaintiff was unable to complete correctly his responsibility for putting together a budget for 2004, without assistance, and had difficulty adhering to the time schedule set for completing the task. (JS ¶ 30.) Occasionally, Maurer would ask Silkwood to help plaintiff with his tasks and prior to departing from defendant's employ, Maurer advised Bartolacci that plaintiff was "so far marginal." (JS ¶ 32.)

Bartolacci provided a management performance appraisal for plaintiff for fiscal year 2004. Overall, plaintiff was awarded a sub-standard, "adequate," rating. He also received an "adequate" rating in four categories, "technical expertise," "taking initiative," "customer satisfaction," and "judgment," while receiving "competent" ratings in the categories of "leadership," "developing people," "communications," "safety and health," and "teamwork." (JS ¶¶ 37, 38.) Bartolacci did not believe that plaintiff had the requisite general accounting skills for the division controller position, and testified that, "[u]nlike [plaintiff], Mr. Kenna met the qualifications for the position." (JS ¶ 41.)

The senior vice president of operations, Sandra Matson ("Matson") testified that she had the opportunity to observe plaintiff's performance during his tenure with defendant when plaintiff provided support to her group, and that she had noticed that he made mistakes in his work performance. (JS ¶ 42.) Plaintiff, however, did not report directly to Matson and she had no responsibility for evaluating his performance. (Id.) Matson testified that she had articulated

to Bartolacci that she lacked faith in plaintiff's work product and that she would rather use Elewski for an important project. (JS ¶ 54.)

### Procedural Background

_____Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was not given the opportunity to apply for two comparable positions, for which he was highly qualified, that were created by defendant after his position of operations controller was eliminated on or about November 8, 2004.  (JS ¶ 17.)  The first position of division controller was awarded to Kenna, who was approximately thirty-six years old.  The second position of S-O coordinator was awarded to a female, Silkwood.  Plaintiff stated that he was not given any reason for his non-selection for either position and believes that he was discriminated against because of his age, in violation of the ADEA, and his sex, in violation of Title VII.  (Id.)

In response to plaintiff's EEOC charge, defendant represented that it had offered plaintiff the job as plant controller for the York wood plant.  (Def. Ex. D DEF 1034.)  Defendant also acknowledged that the wood plant controller position was a position with less responsibility and a lower salary than plaintiff's eliminated position.  (Id.)

On August 15, 2006, the EEOC issued a right to sue letter to plaintiff.  (JS ¶ 19.)  On November 13, 2006, plaintiff filed the instant lawsuit against defendant alleging claims of sex discrimination under Title VII and age discrimination under ADEA, includeing constructive discharge under both, as well as a claim of common law wrongful discharge.  On April 2, 2008, defendant filed the motion for summary judgment which is before the court for resolution.

## Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, the depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The nonmoving party must point to specific affirmative evidence in the record, rather than rely upon conclusory or vague allegations or statements. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Concrete evidence must be provided for each element of a claim, and the evidence must be such that a reasonable fact-finder could find in that party's favor at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "A nonmoving party, like plaintiff, must 'designate specific facts showing that there is a genuine issue for trial.'" Orenge v. Veneman, No. 04-cv-297, 2006 WL 2711651 at *2 (W.D. Pa. 2006) (quoting Celotex, 477 U.S. at 324).

A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson, 477 U.S. at 248. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993); Pollack v. City of Newark, 147 F. Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957), cert. denied, 355

U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to

consider exhibits and other papers that have been identified by affidavit or otherwise made

admissible in evidence").

**Discussion**

**I.      Discrimination claims under Title VII and the ADEA**

  **A.      Burden-Shifting Framework**

The Supreme Court recognized that it is often difficult for a plaintiff to prove that an

employer acted with conscious intent to discriminate.  See McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973).  One manner in which a plaintiff can meet this ultimate burden of

persuasion is by demonstrating that an employer's stated reason for the challenged action is not

the true reason, but rather was a pretext for unlawful discrimination.  Texas Dep't of Cmty.

Affairs v. Burdine, 450 U.S. 248, 253 (1981).  In cases where there is no direct evidence of

discrimination, the United States Court of Appeals for the Third Circuit applies the burden-

shifting analysis set forth in McDonnell Douglas.  See Barber v. CSK Distrib. Servs., 68 F.3d

694 (3d Cir. 1995).  Under this analysis, a plaintiff must first establish a prima facie case of

discrimination.  McDonnell Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 254.

If the plaintiff successfully demonstrates a prima facie case of discrimination, the burden

of production -- but not the burden of persuasion --  shifts to the defendant to articulate a

legitimate, nondiscriminatory reason for the adverse employment decision.  Simpson v. Kay

Jewelers Div. of Sterling, Inc., 142 F.3d 639, 644 n.5 (3d Cir. 1998).  The defendant can satisfy

this burden by offering evidence of a nondiscriminatory reason for its action.  Fuentes v. Perskie,

32 F.3d 759, 763 (3d Cir. 1994).  Once the defendant offers a legitimate, nondiscriminatory

reason for the challenged conduct, the plaintiff has the ultimate burden of proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination.  <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 410 (3d Cir. 1999).  The <u>McDonnell Douglas</u> burden-shifting analysis is applied to cases under both the ADEA and Title VII.

Plaintiff asserts claims based upon three separate adverse employment actions in this case.  First, plaintiff alleges that he was discriminated against because of his age when he was not hired for the division controller position after his position was eliminated.  Second, plaintiff alleges that he was discriminated against because of his sex when he was not hired for the S-O coordinator position when his position was eliminated.  Third, plaintiff alleges that he was constructively discharged because of his age or his sex when he was offered an inferior job after his position was eliminated.  The court will separately address each adverse employment action.

### B.      ADEA claim based on not being promoted to the division controller position.

#### 1.      Prima facie case

The ADEA prohibits an employer from discriminating against any employee on the basis of the employee's age if the employee is over forty years old.  29 U.S.C. §§ 623 (a), 631 (a).  To establish a prima facie case in a failure to promote case, the plaintiff must show 1) that he was age forty or older, 2) that he applied for and was qualified for the job, 3) that despite his qualifications he was rejected, and 4) that the employer filled the position with someone sufficiently younger to permit an inference of age discrimination.  <u>Barber v. CSX Distribution Services</u>, 68 F.3d 694, 698 (3d Cir. 1995).

In this case, the evidence of record establishes a prima facie case of age discrimination relating to the division controller position.  The parties do not dispute the first element that

plaintiff was over forty at the time the division controller position was filled or the third element

that plaintiff was considered for the position and rejected.  The court will consider the second

and fourth elements.

(a) Second element - applied for and was qualified for the job

(i) Application requirement

Defendant argues that plaintiff has not met the second element, because he never formally

applied for the position of division controller.  Given the record before the court, this argument is

not persuasive.  A failure to apply formally for a job opening will not necessarily bar a Title VII

or ADEA plaintiff from establishing a prima facie claim of discriminatory hiring, especially

when the plaintiff has made every reasonable attempt to convey his interest in the job to the

employer.  E.E.O.C. v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990).[2]  In Metal Service

Co., the United States Court of Appeals for the Third Circuit noted that the McDonnell Douglas

prima facie test should not be viewed as a rigid formula, and added:

> "[t]he importance of McDonnell Douglas lies, not in its
> specification of the discrete elements of proof there required, but in
> its recognition of the general principle that any Title VII plaintiff
> must carry the initial burden of offering evidence adequate to
> create an inference that an employment decision was based on a
> discriminatory criterion illegal under the Act."

Id.  (quoting International Broth. of Teamsters v. U.S., 431 U.S. 324, 358 (1977)).  "Instead,

---

[2]Although Metal Service Co. dealt with a Title VII claim and not an ADEA claim, the
United States Court of Appeals for the Third Circuit has applied the concepts from Metal Service
Co. to ADEA claims.  See Lula v. Network Appliance, Inc., 245 Fed. App'x 149, 152 -153 (3d.
Cir. 2007) (applying the application requirement rationale espoused in Metal Service Co. to an
ADEA claim).

courts must be sensitive to the myriad of ways such an inference can be created." Id. The court

of appeals approvingly cited opinions which held that the application element of the primae facie

case in a failure to promote case could be relaxed when an informal application process is

utilized.[3] The court of appeals noted that "[a] relaxation of the application element of the prima

facie case is especially appropriate when the hiring process itself, rather than just the decision-

making behind the process, is implicated in the discrimination claim or is otherwise suspect."

(Id.)

   In this case, the evidence of record shows that defendant regularly used an informal

promotion process to promote current employees from within the organization. Plaintiff was

promoted to his position of operations controller for the casket division without a formal

---

[3]Metal Service Co., 892 F.2d at 348 (citing "Holsey v. Armour & Co., 743 F.2d 199, 208-09 (4th Cir.1984), cert. denied, 470 U.S. 1028 (1985) (where employee was never asked to fill out an application, the employer had no blacks in sales positions, and had actively discouraged black applicants, casual inquiry into the possibility of promotion to a sales job sufficient for application); Paxton v. Union Nat'l Bank, 688 F.2d 552, 568 (8th Cir.1982), cert. denied, 460 U.S. 1083 (1983) (where vacancy not posted and plaintiff did not hear about it from any other source until the position was filled, expression of a general desire to advance in bank was sufficient for application); Abrams v. Baylor College of Medicine, 581 F.Supp. 1570, 1579 (S.D.Tex.1984), aff'd in part and rev'd in part on other grounds, 805 F.2d 528 (5th Cir.1986) (where interest in participating in career advancing program was not communicated by formal application but spread through word-of-mouth, plaintiff's informal communication to his supervisors of his desire to participate is enough for the prima facie case); Ferguson v. E.I. duPont de Nemours and Co., Inc., 560 F.Supp. 1172, 1192-93 (D.Del.1983) (where job vacancies not posted or advertised, plaintiff's "generalized expression of interest [to supervisor] can be considered an application" even though communicated interest was actually for another position); Box v. A & P Tea Co., 772 F.2d 1372, 1376-77 (7th Cir.1985), cert. denied, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986) (where employer had no system to ensure all interested applicants could apply, no formal applications were sought and job openings were not posted, "the plaintiff can establish the application element of the prima facie case by showing that, had she known of ... [the] opening, she would have applied")").

application process.  The chief financial officer at the time simply approached plaintiff and asked him if he was interested in the position.  When plaintiff's position of operations coordinator was eliminated, defendant did not require plaintiff to go through a formal process of application, but simply asked him if he was interested in the wood plant coordinator position.  When Silkwood's position was eliminated, there is no record of a formal application process for the S-O coordinator position - Silkwood was simply given the position.  When Elewski's position was eliminated, he was given a new position without a formal application process.

The circumstances surrounding the hiring process for the division controller position also support a relaxation of the application requirement.  Sometime in early summer 2004, the decision was made to eliminate three positions and consolidate them into the division controller position.  The management team including Nicola, who was responsible for filling the position, began discussing which internal candidates might be appropriate for the position.  Defendants had a policy of filling positions from within the company if possible.  Nicola specifically considered Robinson as a candidate and rejected him at that time.  Nicola identified two internal candidates as appropriate to fill the position, Kalinyak and Benvenuto.  Both candidates were sufficiently younger than Robinson to create an inference of age discrimination with respect to the prima facie case - Kalinyak was four years younger and Benvenuto was fifteen years younger. After Kalinyak and Benvenuto turned down the position, defendant looked outside the company to fill the position and offered the job to Kenna who accepted.  Kenna was fifteen years younger than Robinson.  Kenna did not find out about the job through public notification or application, but acquired the job through a headhunter.  Only after the position was filled did Bartolacci inform Robinson that his position was being eliminated and for the first time told Robinson that

they were not satisfied with his performance.

Defendant's argument that Robinson should have applied for the job is belied by defendant's conduct in filling the position without the knowledge or participation of interested parties, including Robinson. The only proffered evidence in favor of this argument is that plaintiff had seen a monster.com ad for a division controller position by some unknown employer in August 2004. Defendants seem to be arguing that Robinson should have applied for this position at that time. Robinson, however, had no reason to apply. He did not know that his position was being eliminated or that the opening was with defendant.

Robinson can not be expected to apply formally for a job under those circumstances. Defendant knew that Robinson's job was being eliminated. Defendant knew or should have known under those circumstances that Robinson would like to be considered for the position. Defendant did, in fact, consider Robinson - without his knowledge - for the position and rejected him. Robinson had no reason to know he should apply for the job. Defendant's conduct shows that an employee did not need to apply formally for the position. Due to defendant already rejecting plaintiff for the position, it would have been futile for Robinson to apply. The defendant offered the position to three sufficiently younger candidates in a secret, closed, and subjective process. Defendant actually considered plaintiff a candidate. Under these circumstances, plaintiff met the application requirement to establish a prima facie case of age discrimination.

(ii) Qualification requirement

The court next considers whether plaintiff was qualified for the position of division

controller. The Court of Appeals for the Third Circuit recognized that to determine a plaintiff's qualifications for the purposes of proving a prima facie case, an objective standard is used. Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995). "'[W]hile objective job qualifications should be considered in evaluating the Plaintiff's *prima facie* case, the question of whether an employee possesses a subjective quality, such as leadership or management skill, is better left to consideration of whether the employer's nondiscriminatory reason for discharge is pretext.'" Sempier, 45 F.3d at 729, (quoting Weldon v. Kraft Inc., 896 F.2d 793, 798 (3d Cir. 1990)). "'Thus, to deny the plaintiff an opportunity to move beyond the initial stage of establishing a prima facie case because he has failed to introduce evidence showing he possesses certain subjective qualities would improperly prevent the court from examining the criteria to determine whether their use was mere pretext.'" Id. (quoting Weldon, 896 F.2d at 798-99).

This is a difficult inquiry for the court to resolve in this case, because neither party sufficiently articulated what the objective qualifications for the division controller position were. In arguing that Robinson was not qualified for the division controller position, defendant relies on subjective qualities such as leadership ability, initiative, and analytical skills. Defendant also relies heavily upon plaintiff's job performance evaluations in areas such as judgment, leadership and team work. These are subjective elements which were contemplated by the court of appeals in Sempier, and are more appropriate for evaluating the employer's legitimate business reason - not the prima facie case. The objective elements the court should consider for the prima facie case include level of education, special training or certification required, amount of relevant experience required and type of experience required to be considered for a position. The parties did not articulate the minimum qualifications for the division controller position. Under these

circumstances, the court will consider the objective qualifications of the least qualified person who was offered the position to determine whether plaintiff was qualified for the position.

In this case, Kenna who was offered and accepted the job had the least objective qualifications. The court is not opining whether one candidate is more qualified than the other, but is simply inquiring whether Robinson meets the minimum relevant objective qualifications as embodied in Kenna, the candidate who was actually offered the position. Kenna has a bachelors degree in accounting. Robinson has a bachelors degree in management and marketing as well as a masters degree in finance and management. Defendant did not articulate that a bachelors degree in accounting was required, and Robinson's education meets or exceeds the qualifications. The record does not indicate that Kenna had any specific certifications or special training that was required for the job. Kenna had some experience in general accounting activities, operations, and auditing. Robinson also had experience in those areas. From the record before the court, the plaintiff, like Kenna, possessed the objective qualifications for the position. Sufficient evidence was adduced to satisfy the second element of the <u>McDonnell Douglass</u> prima facie test with respect to this position.

(b) Fourth element - filled position with sufficiently younger individual

With regard to the fourth element, the division controller position was filled by Kenna who is fifteen years younger than defendant. This age difference is sufficient to create an inference of age discrimination. Defendant argues that its first choice to fill the position - Kalinyak - was only four years younger than plaintiff, and that a four-year age difference is insufficient to create an inference of discrimination. There is no particular age difference,

however, required to be shown. Sempier, 45 F.3d at 729. For example, courts have held that a five-year difference can be sufficient, but that a one year difference cannot. Id. In Sempier, the United States Court of Appeals for the Third Circuit found that a four-year age difference was sufficient given the facts of that case. Id. at 730. The court is not limited to examining just the candidate who actually received the position, but in this case, the court can consider all three candidates who were offered the position. See Id. (considering not only the age of plaintiff's final replacement, but also his temporary replacement). In this case, two of the candidates were fifteen years younger than plaintiff. One of the candidates, Kalinyak, was four years younger than plaintiff, but he was less than fifty years old. Robinson testified that defendant had a practice of discriminating against employee who were over fifty. Given the circumstances of this case - two candidates who were substantially younger than plaintiff were offered the position, Kalinyak was under fifty, and the four-year age difference between Kalinyak and plaintiff - there is sufficient evidence of record to create an inference of age discrimination. Plaintiff adduced sufficient evidence to satisfy all four elements of an ADEA claim with respect to the division controller position.

## 2. Legitimate Business Reasons

Once a plaintiff has established a prima facie case the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for reasons that are legitimate and nondiscriminatory. Burdine, 450 U.S. at 254. An employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a reason that was not discriminatory for

the adverse employment decision. <u>Fuentes</u>, 32 F.3d at 763; <u>see</u> <u>generally</u> <u>St. Mary's Honor Ctr. v.</u> <u>Hicks</u>, 509 U.S. 502, 509 (1993). It is not necessary for the defendant to persuade the court that it was actually motivated by the reason which it offers. <u>Burdine</u>, 450 U.S. at 254; <u>Bd. of Trs. of</u> <u>Keene State Coll. v. Sweeney</u>, 439 U.S. 24, 25 (1978).

Defendant maintains that Robinson was rejected for the division controller position because he was performing below expectations in his current position and he lacked the requisite leadership ability, initiative and analytical skills needed for the division controller position.

The division controller position would have been considered a promotion for Robinson. Defendant asserts that current employees are ineligible for promotion if they are not currently meeting expectations and performing above standard in their present position. As documented in his performance appraisals, plaintiff received adequate ratings (below standard) in several key categories including "technical expertise," "taking initiative," "customer satisfaction," and "judgment." By contrast, neither Kalinyak nor Benvenuto received a score below the above-standard "commendable" rating on any performance appraisal in 2003 or 2004. Plaintiff had difficulty correctly completing his responsibility for putting together a budget for 2004, without assistance. Bartolacci did not believe that plaintiff had the requisite general accounting skills for the division controller position. Matson noticed that plaintiff made mistakes in his work, and she lacked faith in plaintiff's work. Defendant has met its light burden of articulating legitimate business reasons for not promoting plaintiff to the division controller position.

### 3. Pretext

The last part of the analysis requires that,

> [o]nce the employer answers its relatively light burden by articulating a
> legitimate reason for the unfavorable employment decision, the burden of
> production rebounds to the plaintiff, who must now show by a
> preponderance of the evidence that the employer's explanation is
> pretextual (thus meeting the plaintiff's burden of persuasion.)"

Fuentes, 32 F.3d at 763. After the employer has stated a legitimate, nondiscriminatory reason for
the adverse employment action, the plaintiff in order to survive summary judgment must satisfy
at least one of the two prongs articulated by the United States Court of Appeals for the Third
Circuit in Fuentes:

> [T]he plaintiff must point to some evidence, direct or
> circumstantial, from which the fact-finder could reasonably either
> (1) disbelieve the employers articulated legitimate reasons; or (2)
> believe that an invidious discriminatory reason was more likely
> than not a motivating or determinative cause of the employer's
> action.

Id. at 764.

A plaintiff must submit evidence that could cause a reasonable fact-finder to discredit the
employer's articulated reason for the adverse employment action in order to overcome summary
judgment and bring his case to trial. To discredit the employer's articulated reason, the plaintiff
does not need to produce evidence that necessarily leads to the conclusion that the employer
acted for discriminatory reasons, Sempier, 45 F.3d at 728, nor produce additional evidence
beyond his prima facie case. Fuentes, 32 F.3d at 764. A plaintiff must, however, demonstrate
such:

> weaknesses, implausibilities, inconsistencies, incoherencies [sic],
> or contradictions in the employer's proffered legitimate reasons
> [such] that a reasonable factfinder could rationally find them
> "unworthy of credence" and hence infer that the proffered

nondiscriminatory reason "did not actually motivate" the
employer's action. [Fuentes, 32 F.3d] at 764-65 (quoting Ezold v.
Wolf, Block, Schorr, and Solis-Cohen, 983 F.2d 509, 531 (3d Cir.
1992)).

Simpson, 142 F.3d at 644.  Each prong of the Fuentes test will be addressed.

**(a) <u>Prong One</u>**

The question asked in prong one of the Fuentes test is not whether the employer made the

best, or even a sound, business decision, it is whether the real reason for the adverse result

suffered by the plaintiff is discrimination.  Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109

(3d Cir. 1997).  The court is neither permitted to get involved in the subjective business decisions

of the employer, nor set its own employment standards for the employer, unless there is evidence

of discrimination.  Ezold, 983 F.2d at 527.  "Furthermore, the court should not examine the issue

of whether the employee has skills in an area *other than that identified by the employer* as the

basis for [the decision], because the court would then be impermissibly substituting its own

business judgment for that of the employer." Moorer v. Verizon Commc'ns, No. 03-1265, 2005

WL 2807140, at *9 (W.D. Pa. Oct. 27, 2005), aff'd, 211 F. App'x 98 (3d Cir. 2006) (emphasis in

original).   "An employment decision that would create a problem under prong one will likely turn

on whether the stated reason for [failure to promote] is so implausible that a fact-finder could not

believe it to [be] worthy of credence."  Orenge v. Veneman, No. 04-297, 2006 WL 2711651, at

*15 (W.D. Pa. Sept. 20, 2006); see Menta v. Cmty. Coll. of Beaver County, 428 F. Supp. 2d. 365,

374 (W.D. Pa. 2006).

Plaintiff does not dispute the content of the performance appraisals, but contradicts

defendant's characterizations of them.  Plaintiff argues that his performance was adequate, and

that the first time he knew his performance was not up to expectations was after his position had been terminated and he was rejected for the division controller position. Plaintiff's argument is not sufficient to create an inference of pretext with respect to defendant's business decision. Plaintiff's performance appraisals speak for themselves. While plaintiff's performance was judged adequate, defendant's decision to not promote Robinson because he only had adequate ratings rather than commendable ratings is reasonable and the court may not second guess that decision. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27 (3d Cir.1992), cert. denied, 510 U.S. 826 (1993). Whether plaintiff was aware that management was not satisfied with his performance is not the relevant inquiry. What matters is defendant's opinion about plaintiff's fitness for promotion.

In addition, management was consistent in noting plaintiff's shortcomings in certain areas. On November 3, 2003 (well before defendant considered eliminating plaintiff's position), plaintiff's supervisor Beck noted in his evaluation that plaintiff "did not actively take the lead in identifying, analyzing and resolving apparent issues relative to forecasting the division's future financial performance or its reported actual financial results to senior management." (JS ¶ 24.) Beck also noted a score of two out of five for the categories of "taking initiative" and "leadership." (Id. ¶ 22.) These scores are consistent with Bartolacci's later appraisal of plaintiff for fiscal year 2004, and Nicola's assessment, when rejecting plaintiff for the position, that plaintiff lacked leadership ability, analytical skills and initiative. The court finds that plaintiff failed to adduce sufficient evidence to refute defendant's articulated reasons for not promoting him under the first prong of the Fuentes test. Plaintiff failed to point to evidence which could permit a fact-finder to conclude that defendant's stated reason was "'unworthy of credence.'"

Fuentes, 32 F.3d at 765 (quoting Ezold, 983 F.2d at 531).

**(b) Prong Two**

Plaintiff could also succeed in showing pretext if he adduced sufficient evidence to satisfy prong two of the Fuentes test. Simpson, 142 F.3d at 644-45. To show that discrimination was more likely than not a cause for the employer's adverse actions, a plaintiff must point to evidence with sufficient probative force that would allow a fact-finder to conclude by a preponderance of the evidence that the protected characteristic was a motivating or determinative factor in the employment decision. Id. Relevant evidence that could be relied on in the evaluation of this prong includes: (1) whether the employer has previously discriminated against the plaintiff, (2) whether the employer has discriminated against other people within the plaintiff's protected class or within another protected class, or (3) whether the employer has treated more favorably similarly situated persons not within the protected class. Id. at 645.

(i) Previous discrimination against plaintiff

Plaintiff adduced no evidence that defendant previously discriminated against plaintiff.

(ii) Discrimination by employer against others in plaintiff's protected class

The only evidence plaintiff points to with respect to this Fuentes factor are the allegations that plaintiff made in his deposition that several employees over fifty had been discriminated against by defendant. Plaintiff testified that he was aware of employees over fifty who were performing well and were replaced by younger workers. Plaintiff offered no independent evidence in support of these allegations. Plaintiff presented no documentation of assesment reviews, previous law suits, EEOC or PHRC complaints, or other witnesses to corroborate the allegations. Because these beliefs are unsubstantiated and lacking evidential support, they are not

sufficient in themselves to create an inference of pretext to rebut defendant's business reason for not promoting plaintiff. Dowling v. Citizens Bank, No. 05-cv-914, 2007 WL 2752178, at *9 (W.D. Pa. Sept. 19, 2007) ("largely unsubstantiated suspicions of ageism cannot sustain [plaintiff's] burden on summary judgment."); see Chappell v. GTE Prods. Corp., 803 F.2d 261 (6th Cir. 1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination."). The court finds that plaintiff failed to adduce sufficient evidence to refute defendant's articulated reasons for not promoting him under the second prong of the Fuentes test.

       (iii) Employer treating more favorably similarly situated persons not within the protected class

       Plaintiff did not adduce evidence defendant has treated more favorably similarly situated persons not within the protected class.

       Plaintiff did not offer sufficient evidence to support his claim of discrimination with respect to the division controller position. A reasonable fact-finder could not find intentional age discrimination on the part of defendant with respect to the division controller position, and summary judgment on that claim will be granted.

    **C.**    **Title VII claim based upon not being hired for the S-O coordinator position.**

       **1. Prima Facie Case**

       Title VII was enacted to prohibit employers from discriminating against employees with respect to compensation, terms, conditions, or privileges of employment. Burdine, 450 U.S. at 259. To state a claim for discrimination under Title VII, a plaintiff must show by a preponderance

of the evidence that: (1) he was a member of the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) the employer filled the position with an individual with qualifications similar to the plaintiff who was not a member of the protected class.  <u>Scheidemantle v. Slippery Rock Univ.</u>, 470 F.3d 535, 539 (3d Cir. 2006).

When their respective jobs were eliminated, Silkwood was given the position of S-O coordinator - which plaintiff contends was a lateral move - while Robinson was offered a demotion to wood plant controller.  Plaintiff claims that he should have been considered and hired for the position instead of Silkwood.  Plaintiff claims that he is as qualified as Silkwood, and because he is a male and Silkwood is a female, he was discriminated against with respect to this decision[4].

Plaintiff failed to adduce sufficient evidence to establish a prima facie claim of sex discrimination, because he did not satisfy the second and fourth elements of this claim.  With respect to these elements, plaintiff was not qualified for this position, and did not have qualifications similar to Silkwood.  The S-O coordinator position required, inter alia, knowledge of Sarbanes-Oxley requirements, a reasonable knowledge of GAAP and familiarity with § 404 of Sarbanes-Oxley.  Plaintiff did not show that he had any special knowledge of Sarbanes-Oxley's requirements, a reasonable knowledge of GAAP or a familiarity with § 404.  Silkwood, on the other hand, met all the objective qualifications for the position including special knowledge and

---

[4]Plaintiff initially asserted that he was denied educational and training opportunities that Silkwood was afforded.  Plaintiff claimed that he was discriminated against by not being afforded the same opportunities.  After discovery, plaintiff conceded that there is no basis for this claim, because Silkwood took the initiative on her own to pursue the educational opportunities, and the same educational opportunities were available to Robinson.

training about Sarbanes-Oxley and its requirements. Plaintiff failed to adduce sufficient facts to support an inference of discrimination with respect to this claim. No reasonable jury could render a verdict in favor of plaintiff with respect to this claim, and summary judgment will be granted in favor of defendant.

### D. ADEA[5] constructive discharge claim with respect to the wood plant controller position.[6]

When plaintiff's position was eliminated, defendant offered him a position as wood plant controller which would have entailed a significant decrease in pay, decreased responsibilities and force defendant to either move to York, Pennsylvania or perform his job 225 miles away from the work site. Plaintiff claims that the conditions of the offered position were so intolerable that they amount to a constructive discharge. Plaintiff claims that he was terminated and treated differently than similarly situated employees because of discrimination. A plaintiff alleging age discrimination must first establish a prima facie case of age discrimination by demonstrating that the plaintiff: (1) is a member of the protected class, meaning, at least forty years of age; (2) is

---

[5]Plaintiff asserts constructive discharge under his Title VII sex discrimination claim and ADEA age discrimination claim. The only allegations that plaintiff makes with respect to constructive discharge under his sex discrimination claim were the allegations that Silkwood was treated more favorably because she was offered the S-O coordinator position. The court found no reasonable jury could render a verdict in favor of plaintiff with respect to offering that position to Silkwood. Likewise, plaintiff's Title VII sex discrimination constructive discharge claim can not succeed and the court will not consider it. This discussion will be limited to the ADEA claim.

[6]Defendant made two arguments with respect to this claim: 1) plaintiff failed to exhaust his administrative remedies with respect to this claim, because he did not raise the claim in his EEOC charge; and 2) plaintiff voluntarily left employment with defendant because he chose not to accept his new position, and plaintiff's choice not to take the position does not amount to constructive discharge. These issues need not be addressed due to plaintiff's failure to adduce sufficient evidence to satisfy the fourth element of a prima facie case.

qualified for the position; (3) suffered an adverse employment decision; and (4) in the case of a demotion or discharge, was replaced by a sufficiently younger person to create an inference of age discrimination.  See Simpson, 142 F.3d at 644 n.5.  In the case of a reduction in force[7], the fourth prong, as described above, is inadequate, because the terminated employee was not replaced.  The United States Court of Appeals for the Third Circuit has recognized in the case of a reduction in force, that the fourth element is satisfied by showing that the employer retained someone similarly situated to the plaintiff who was sufficiently younger.  Anderson v. Consolidated Rail Corp., 297 F.3d 242, 249 (3d Cir. 2002) (citing Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 235 (3d Cir. 1999)).

In this case, plaintiff alleges that defendant discriminated against plaintiff when Silkwood was retained instead of plaintiff.  As discussed above, plaintiff failed to establish a sex discrimination claim on the part of defendant with respect to Silkwood and the S-O position. Plaintiff can not establish an age discrimination claim with respect to Silkwood being retained, because Silkwood was older than plaintiff at the time of the elimination of their positions. Likewise, the only other similarly situated identified by plaintiff is Larry Elewski.  Larry Elewski is one year and four months older than plaintiff.  Plaintiff failed to adduce sufficient evidence to satisfy the elements of the primae facie case for age discrimination based on constructive discharge and summary judgment will be granted in favor of defendant with respect to that claim.

## II.  Discrimination claim for wrongful termination under Pennsylvania common law.

In addition to his ADEA and Title VII claims, plaintiff alleges a common law claim for

---

[7]Plaintiff does not dispute that he lost his job because there was a reduction in force, and does not challenge defendant's business reasons for eliminating his position.

wrongful discharge.  In his common law claim, plaintiff alleges that he was terminated "based on his age" and that it is against public policy to discriminate based on age.  (Compl. ¶¶ 25-26.)

Under Pennsylvania law, as a general rule, there is no common law cause of action against an employer for termination of an at-will employee.  Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 918 (Pa. 1989).  There are narrow exceptions to this rule where "discharges of at-will employees would threaten clear mandates of public policy."  Id.  There is no doubt, as plaintiff alleges, that discriminatory termination from employment based on a person's age would violate a clear mandate of public policy.  *See* 43 PA. CONS. STAT. § 955 (including discrimination based upon age, as an unlawful discriminatory practice under the PHRA.)  The Supreme Court of Pennsylvania has recognized, however, that the PHRA provides the exclusive remedy for discriminatory employment practices under Pennsylvania law, and that "the PHRA provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination."  Clay, 559 A.2d at 918.  Plaintiff's tort claim for wrongful discharge will be dismissed.

## Conclusion

Based upon the undisputed evidence of record, viewing all disputed facts in favor of plaintiff and drawing all reasonable inferences in favor of plaintiff the court concludes that a reasonable jury could not render a verdict in favor of plaintiff with respect to his federal claims under the ADEA for age discrimination, including the claim of constructive discharge or under Title VII for sex discrimination, or with respect to his state common law claim of wrongful discharge. Therefore, summary judgment must be granted in favor of defendant with respect to all plaintiff's claims.

By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: March 20, 2009